**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **REV. BARRY D. BILDER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-CV-270-JHP** |
| | ) | |
| **REV. BETH MATHERS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court are (1) Defendant City of Tulsa's Motion for Summary Judgment (Doc. No. 87) and (2) Defendants Church of Holistic Science, Inc., Beth Mathers, and Ruth Bilder's Motion for Summary Judgment (Doc. No. 73). After consideration of the briefs, and for the reasons stated below, Defendants' Motions for Summary Judgment are **GRANTED**.

## BACKGROUND

Plaintiff Rev. Barry D. Bilder ("Plaintiff"), proceeding *pro se*, brought this action under 42 U.S.C. § 1983 for alleged violations of his rights under the Fourth, Fifth, Sixth, Ninth, Tenth, and Fourteenth Amendments to the United States Constitution. Plaintiff also alleges a claim of making a false police report and appears to allege a claim of "selective prosecution." (Doc. No. 58, ¶¶ 39, 40). The Third Amended Complaint names as defendants (1) Rev. Beth Mathers ("Beth Mathers"), (2) Ruth Bilder, (3) Church of Holistic Science, Inc., (4) City of Tulsa, Oklahoma ("City of Tulsa"), and (5) Detective Corey Myers ("Detective Myers"), in his individual capacity. The Court dismissed Detective Myers from this action on May 10, 2017, due to lack of proper service. (Doc. No. 152).

The record reveals the following events took place. On March 18, 2014, the Tulsa Police Department ("TPD") responded to a report of an attempted abduction of two girls. (Doc. No. 87-2 (Police Report), at 2). The girls informed the responding officers that they were selling lemonade at the end of a driveway, when a man driving a gold colored Nissan Maxima drove up and bought a cup of lemonade. (*Id.*; Doc. No. 87-3 (Witness Statements)). The man attempted to entice the girls to get into his car so he could take them to his "studio," where he said they could make some money. (Doc. No. 87-2, at 2). The girls refused and ran inside the house, taking the cup from which the man had drunk with them. (*Id.*). A neighbor had a surveillance camera that showed the gold car being driven by the suspect. (*Id.*; Doc. No. 87-3 (Statement of Jennifer Harmon)). The neighbor provided a copy of the CD from her camera to TPD. (Doc. No. 87-3). TPD collected the lemonade cup from which the man had drunk and had it analyzed for DNA. (Doc. No. 87-4 (Affidavit for Search Warrant)). The DNA on the cup matched the DNA of an unidentified suspect in the rape and kidnapping of a 12-year-old girl. (*Id.*; Doc. No. 87-5 (Affidavit of Detective Myers), ¶ 12).

On a Sunday in late April or early May of 2014, Detective Myers at TPD was driving in Tulsa while off-duty, when he noticed a tan/gold Nissan Maxima being driven near him. (Doc. No. 87-5, ¶ 9). Detective Myers took down the license plate number, and when he returned to work, he researched who owned the car. (*Id.* ¶ 10). Detective Myers learned that the car was registered to the Church of Holistic Science. (*Id.* ¶ 13). TPD officers visited the church and spoke with Ruth Bilder and Beth Mathers, who told them the car was in Plaintiff's possession. (*Id.* ¶ 14; Doc. No. 73-1 (Affidavit of Beth Mathers), ¶¶ 7-8; Doc. No. 73-2 (Affidavit of Ruth Bilder), ¶¶ 7-8). Ms. Bilder advised Detective Myers that she was married to Plaintiff, but they were in the process of obtaining a divorce. (Doc. No. 87-5, ¶ 14). Both Ms. Mathers and Ms.

Bilder state in their respective Affidavits that they informed TPD officers that they did not believe Plaintiff to be the person TPD was seeking and "exonerated" Plaintiff in their interviews with TPD. (Doc. No. 73-1, ¶¶ 8-9; Doc. No. 73-2, ¶¶ 8-9).

On May 8, 2014, two TPD detectives visited Plaintiff's address and advised him that his car matched the description of a car involved in an attempted kidnapping. (Doc. No. 87-5, ¶ 15; Doc. No. 87-4). The TPD officers asked Plaintiff to voluntarily submit a DNA sample by buccal swab to rule him out as a suspect. (Doc. No. 87-4; Doc. No. 87-5, ¶ 15). Plaintiff refused to submit a DNA sample and advised the detectives to speak with his lawyer. (Doc. No. 87-4; Doc. No. 87-5, ¶ 16).

On May 9, 2014, Detective Myers prepared an Affidavit for Search Warrant, which states in relevant part:

> The listed suspect is in possession of a Tan/Gold Nissan Maxima with tinted windows that matches the suspect vehicle listed in the attempted kidnapping from 3533 S. Louisville Ave. DNA was collected and preserved from the lemonade cup. Detectives Reid and Watkins visited the above listed suspect at his address on May 8, 2014 to get a DNA sample. The suspect refused to comply with giving his sample. The suspect stated that he had an attorney out of Creek County. Detective Watkins asked defendant to have his attorney call detective Myers. As [sic] May 9, 2014 I have not heard from the suspect's attorney.
>
> A DNA profile matched both cases on an unidentified suspect.
>
> Your affiant requests the issuance of a search warrant to obtain buccal swabs from the defendant to obtain a DNA sample to compare to the evidence collected.

(Doc. No. 87-4). The Affidavit states Detective Myers believed everything contained therein to be accurate and truthful at the time he prepared the Affidavit. (Doc. No. 87-4). Detective Myers reiterates this belief in the Affidavit he prepared for this case. (Doc. No. 87-5, ¶ 17). A magistrate judge signed the Affidavit for Search Warrant on May 11, 2014. (Doc. No. 87-4).

The TPD warrant division was unable to intercept Plaintiff to serve the warrant. (Doc. No. 87-5, ¶ 21). Plaintiff asserts his attorney provided TPD with an agreed time and place for Plaintiff to provide his DNA sample, although Detective Myers disputes such an agreement was made. (*Id.* ¶ 19; *but see* Doc. No. 122 (correspondence from Edge Law Firm to Plaintiff, May 16, 2014), at 16) (stating, "[t]hey have a valid warrant to collect your DNA. They have given us a gentleman's agreement to collect this on Monday.")). Detective Myers then attempted to intercept Plaintiff at a QuikTrip location to serve the warrant, but he arrived as Plaintiff was leaving. (Doc. No. 87-5, ¶ 22). Detective Myers pulled over Plaintiff's car so the warrant could be served and the buccal swab taken. (*Id.*). When Plaintiff's buccal swab was run for DNA and compared with the DNA collected from the two crimes, TPD learned Plaintiff's DNA did not match that of the suspect. (*Id.* ¶ 23). Therefore, Plaintiff was never charged, arrested, or brought into the police station in connection with this investigation. (*Id.* ¶ 24).

In his Third Amended Complaint, Plaintiff alleges Defendants Beth Mathers and Ruth Bilder "knowingly, and with criminal intent to harm the Plaintiff, made a false report to the Tulsa Police, through its agent, Defendant Det. Corey Myers." (Doc. No. 58, ¶ 40). Plaintiff further alleges TPD violated his rights under the Fourth, Fifth, Sixth, Ninth, Tenth, and Fourteenth Amendments to the United States Constitution, and appears to claim he was selectively prosecuted by TPD. (*Id.* ¶¶ 39, 45, 47). All remaining defendants have now moved for summary judgment. (Doc. Nos. 73, 87). Defendants Church of Holistic Science, Inc., Beth Mathers, and Ruth Bilder have adopted the Motion for Summary Judgment and attached exhibits filed by the City of Tulsa. (Doc. No. 88). The motions are fully briefed and ripe for review.

# DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

However, a party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). "[B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009). Specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (quotation marks omitted). Moreover, "[i]n a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted). In addition, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact." *Scott*, 550 U.S. at 380 (quoting *Anderson,* 477 U.S. at 247-248). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

The Court further notes that, while *pro se* pleadings must be liberally construed and must be held to less stringent standards than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a district court should not assume the role of advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Moreover, even *pro se* plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil and Appellate Procedure," and the liberal construction to be afforded does not transform "vague and conclusory arguments" into valid claims for relief. *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

## I.    City of Tulsa's Motion for Summary Judgment

Plaintiff raises claims against the City of Tulsa for violations of his rights under the Fourth, Fifth, Sixth, Ninth, Tenth, and Fourteenth Amendments to the United States Constitution. Plaintiff also appears to raise a claim of selective prosecution against the City of Tulsa. The Court addresses each claim below.

### A.    Fourth Amendment Violations

Plaintiff's claims against the City of Tulsa stem from his allegations that the City of Tulsa illegally obtained and executed a warrant to collect a sample of his DNA. (*See* Doc. No. 58). Specifically, Plaintiff alleges Detective Myers falsely indicated on the Affidavit for Search

Warrant that Plaintiff's car had tinted windows, (Doc. No. 58, ¶ 20), that TPD pursued a warrant even though Plaintiff bore no resemblance to the suspect (*id.* ¶ 43), and TPD's execution of the warrant involved harassing him and violating an agreement for Plaintiff to surrender his DNA at the police station in the presence of his attorney (*id.* ¶¶14-16, 22-24). Such claims must arise under the Fourth Amendment to the United States Constitution, which protects against unreasonable searches and seizures and requires warrants to be issued upon probable cause and supported by oath or affirmation. *See* U.S. CONST. amend. IV. Such a claim is made actionable in a civil suit pursuant to 42 U.S.C. § 1983.

### 1. Validity of the DNA Warrant

The City of Tulsa argues Plaintiff's Fourth Amendment claim that the DNA warrant was obtained without probable cause fails, because Plaintiff cannot meet his burden for prevailing on such a claim. To prevail on this claim, Plaintiff must be able to satisfy a two-prong test. First, Plaintiff must demonstrate that the officer "'knowingly, or with reckless disregard for the truth,'" either included a false statement in the affidavit or omitted material facts from the affidavit. *Stewart v. Donges*, 915 F.2d 572, 581-82 (10th Cir. 1990) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). Second, Plaintiff "must demonstrate that those false statements or omissions are "'necessary to the finding of probable cause.'" *Id.* (quoting *Franks*, 438 U.S. at 155-56).

The City of Tulsa contends Plaintiff cannot meet the first prong of the test, because at the time Detective Myers prepared the Affidavit for Search Warrant, he believed everything contained therein to be accurate and truthful. (Doc. No. 87-5 (Affidavit of Corey Myers), ¶ 17). As a result, Plaintiff cannot show Detective Myers' sworn statement that the car had tinted windows was made "knowingly and intentionally or with a reckless disregard for the truth," even

if Plaintiff's car did not have tinted windows. The Court agrees. Plaintiff has offered no evidence suggesting Detective Myers' statement about tinted windows, even if false, was made knowingly or with a reckless disregard for the truth. Even if Detective Myers' allegedly-false statement was made negligently or by mistake, a plaintiff's "'[a]llegations of negligence or innocent mistake are insufficient'" to provide a basis for a constitutional violation. *Stewart*, 915 F.2d at 582 (quoting *Franks*, 438 U.S. at 155-56).

In his Response brief, Plaintiff argues Detective Myers must have "intentionally included" the false statement about Plaintiff's vehicle having tinted windows, because Detective Myers is an experienced investigator and it is "inexcusable" that he would be unable to determine the difference between tinted and clear-class windows. (Doc. No. 96, at 3). Plaintiff's speculation about Detective Myers' intent, however, is not evidence. Plaintiff cannot avoid summary judgment simply with unsupported allegations that disputed facts exist.

Plaintiff further argues in his Response that Detective Myers "knowingly substituted" Plaintiff's physical description for that of the actual perpetrator in the Affidavit. (Doc. No. 96, at 3-4). However, Detective Myers correctly described the suspect as an "unknown white male" in the Affidavit, and he correctly described Plaintiff as a white male in the Affidavit. (Doc. No. 87-4). Plaintiff does not identify any evidence that was known to Detective Myers at the time he completed the Affidavit that would indicate he made a false statement or omission knowingly or with reckless disregard for the truth. Plaintiff argues the Affidavit should have provided comparative data "showing the obvious discrepancies between the appearance of the Plaintiff and that of the actual perpetrator." (Doc. No. 96, at 3). However, at the time Detective Myers prepared the Affidavit for Search Warrant, the perpetrator's identity was unknown, and the

police had only witness descriptions on which to rely. Accordingly, Plaintiff cannot meet his burden on the first prong.

The City of Tulsa further argues Plaintiff cannot meet the second prong of the test, because the allegedly-false statements and omissions are not "necessary to" to the authorization of the search warrant. Again, the Court agrees. As Detective Myers indicates in an Affidavit for this case, tinted windows are easily changed or removed on a car, and are not material to whether probable cause existed to issue this search warrant. (Doc. No. 87-5, ¶ 17). The make, model, and color of Plaintiff's car matched the description of the suspect's vehicle, which Detective Myers included in the Affidavit for Search Warrant. (Doc. No. 87-4). No reasonable jury could find that the Affidavit would have lacked sufficient probable cause to allow the magistrate judge to issue the warrant if the information about tinted windows had been omitted. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Moreover, as explained above, the suspect's identity was unknown to TPD at the time Detective Myers completed the Affidavit for Search Warrant, which nullifies Plaintiff's argument that the suspect's detailed physical description should have been included. Here, the fact that Plaintiff, a white male, drove a car of the same make, model, and color of the vehicle driven by an unknown white male suspect in an attempted kidnapping of two girls and successful kidnapping and rape of a 12-year-old girl was sufficient to provide probable cause for the magistrate judge to issue a warrant for a buccal swab. Based on the undisputed evidence,

Plaintiff's claim that the warrant was defective fails. Accordingly, the City of Tulsa is entitled to summary judgment on this claim.

### 2. Execution of the DNA Warrant

The City of Tulsa also argues the execution of the DNA warrant was valid as a matter of law. In the Third Amended Complaint, Plaintiff alleges TPD surrounded his residence using "SWAT-like" actions, approaching his residence with weapons drawn, while Plaintiff was not home. (Doc. No. 58, ¶ 14). Plaintiff further alleges a helicopter hovered over Plaintiff's backyard in May 2014, and he speculates TPD posed as Oklahoma Natural Gas workers and Cox cable installers in order to gain access to his property without a warrant. (*Id.* ¶ 15). Plaintiff offers no evidence in support of these allegations. Detective Myers affirmatively states TPD was not involved in any such incidents, and as the detective on this case, he would have been aware of such incidents if they had occurred. (Doc. No. 87-5, ¶ 25). Plaintiff does not address these allegations in his Response or Surreply briefs. No reasonable juror could find that TPD was responsible for such incidents. Accordingly, the City of Tulsa is entitled to summary judgment with respect to these allegations.

Further, the City of Tulsa argues its execution of the DNA warrant by taking Plaintiff's DNA sample was reasonable as a matter of law. The conduct of police officers in executing a search warrant is subject to a reasonableness standard under § 1983. *See U.S. v. Ramirez*, 523 U.S. 65, 71 (1998). Here, the Court agrees the undisputed evidence shows TPD acted reasonably in executing the DNA warrant. TPD officers attempted to intercept Plaintiff to serve the warrant without success. (Doc. No. 87-5, ¶ 21). Detective Myers later attempted to intercept Plaintiff at a QuikTrip location to serve the warrant, but Plaintiff left before Detective Myers arrived. (*Id.* ¶

22). Thereafter, TPD pulled Plaintiff over, served Plaintiff with the search warrant, and obtained the buccal swab pursuant to the warrant. (*Id.*).

Plaintiff complains TPD did not serve the warrant in the presence of his attorney and in the presence of his children, but these allegations, even if true, are insufficient to demonstrate the execution of the search warrant was unreasonable as a matter of law. For this reason, Plaintiff's evidence suggesting that TPD violated an agreement for Plaintiff to appear at the police station with counsel for the DNA collection (*see* Doc. No. 122, at 16), taken as true, does not preclude summary judgment on this issue. Accordingly, the City of Tulsa is entitled to summary judgment on this claim.

In his Response, Plaintiff relies on *Maryland v. King*, 133 S. Ct. 1958 (2013) for the proposition that a suspect's DNA cannot be seized prior to arrest. Plaintiff misstates the holding of that case. In *King*, the United States Supreme Court reviewed the constitutionality of Maryland's DNA Collection Act, which authorized law enforcement officers to collect DNA samples from an individual charged with a serious crime. 133 S. Ct. at 1967. An arrestee who had been subject to DNA collection under this law challenged its constitutionality under the Fourth Amendment. *Id.* at 1966. In upholding the constitutionality of the Maryland law, the Court held that a warrantless search using a buccal swab to obtain an arrestee's DNA sample after being arrested for a serious offense is "a legitimate police booking procedure that is reasonable under the Fourth Amendment." *Id.* at 1980. The Court in *King* did *not*, however, conclude that collection of a DNA sample pursuant to a valid search warrant is unconstitutional. Accordingly, Plaintiff's assertion that his DNA could not legally be seized prior to arrest is unfounded in law.

### B. Municipal Liability Claims Against the City of Tulsa

To state a claim under 42 U.S.C. § 1983 against a municipality, a plaintiff must prove: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Com'rs,* 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 (1978)). If the municipal employee committed no constitutional violation, then there can be no municipal liability. *Id.* As explained above, Plaintiff cannot show a City employee committed a constitutional violation against him, because the undisputed evidence shows the DNA search warrant was supported by probable cause and was executed in a reasonable manner. For this reason, Plaintiff's Fourth Amendment claims against the City of Tulsa fail, and the City of Tulsa is entitled to summary judgment in its favor.

Moreover, even if doubt existed as to whether Plaintiff's constitutional rights were violated, Plaintiff's Fourth Amendment claims against the City of Tulsa still must fail because Plaintiff cannot show that the City of Tulsa had a policy or custom that was the moving force behind such violations. To establish municipal liability under § 1983, "'a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a *direct causal link* between the municipal action and the deprivation of federal rights.'" *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010) (quoting *Bd. Of Cnty. Com'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997)). A policy must be a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by a municipality's officers." *Lankford v. City of Hobart,* 73 F.3d 283, 286 (10th Cir. 1996) (quoting *Starrett v. Wadley,* 876 F.2d 808, 818 (10th Cir.1989)) (quotation and alteration marks omitted). A custom must be a practice that is "'persistent and widespread.'" *Id.* (quoting *Starrett*, 876 F.2d at 818).

Generally, "allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Fraire v. City of Arlington,* 957 F.2d 1268, 1278 (5th Cir.1992).

Here, Plaintiff has pointed to no custom or policy that was the moving force behind any alleged constitutional violations. In his Surreply, Plaintiff points to a "Search Warrant for Body Samples" (Doc. No. 122, at 3-4), which was produced in discovery, as evidence of the City of Tulsa's "admitted lack of any procedure or policy to seize DNA from an individual, [which] apparently allows police officers, or other City employees, to write law for the convenience of the TPD." (Doc. No. 121, at 4). However, Plaintiff fails to demonstrate any link between the Search Warrant and a policy at TPD to violate the law of search and seizure. To the contrary, the City of Tulsa points to the TPD Rules and Regulations, which require TPD officers to defend, enforce, and obey the Constitution and laws of the United States. (*See* Doc. Nos. 87-7 (TPD Rules & Regulations), 87-8 (TPD Oath of Office)). Plaintiff's speculation regarding policy at TPD or lack thereof is insufficient to avoid summary judgment on this issue.

In his Surreply, Plaintiff further argues the City of Tulsa is responsible for TPD's lack of care in investigating him, based on the employer-employee relationship. (Doc. No. 121, at 2-3). However, contrary to Plaintiff's understanding, the United States Supreme Court in *Monell* rejected the imposition of municipal liability "solely on the basis of the existence of an employer-employee relationship with a tortfeasor." 436 U.S. at 692. Therefore, the undisputed evidence shows Plaintiff cannot prove a claim of municipal liability under § 1983 for a Fourth Amendment violation.

## C.     Fifth Amendment Violation

Plaintiff alleges he "lost his Fifth Amendment guarantee that a citizen is free from being made a 'witness against oneself'" when his DNA was seized. (Doc. No. 58, ¶ 47). The City of

Tulsa argues no such right existed in these circumstances. The Court agrees. "The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, requires that '[n]o person . . . shall be compelled *in any criminal case* to be a *witness* against himself.'" *Chavez v. Martinez*, 538 U.S. 760, 766 (2003) (quoting U.S. CONST. amend. V) (internal citation omitted). For purposes of the Fifth Amendment, a "'criminal case,' at the very least requires the initiation of legal proceedings," and does not encompass the entire criminal investigatory process. *Id.* at 766-67. In this case, it is undisputed that no legal proceedings were ever initiated against Plaintiff. (*See* Doc. No. 58, ¶ 21; Doc. No. 87-5 (Affidavit of Detective Myers), ¶ 24). Therefore, Plaintiff cannot allege his Fifth Amendment right was violated, because he was never charged or prosecuted for a crime, or compelled to be a witness against himself in a criminal case. Accordingly, the City of Tulsa is entitled to summary judgment in its favor on this claim.

## D.     Sixth Amendment Violations

Plaintiff alleges he "lost his Sixth Amendment 'Right to Counsel'" when TPD disregarded an agreement to collect Plaintiff's DNA sample in the presence of Plaintiff's attorney. (Doc. No. 58, ¶ 47). Plaintiff adds in his Surreply that his Sixth Amendment rights were also violated when TPD made no effort to contact Plaintiff's attorney after Plaintiff advised them he had one. (Doc. No. 121, at 2). Again, the City of Tulsa argues no such right existed in these circumstances, and again, the Court agrees. The purpose of the Sixth Amendment is "to assure that in any 'criminal prosecution[n],' U.S. Const., Amdt. 6, the accused shall not be left to his own devices in facing the 'prosecutorial forces of organized society.'" *Moran v. Burbine*, 475 U.S. 412, 430 (1986) (quoting *Maine v. Moulton*, 474 U.S. 159, 170 (1985)) (quotation marks omitted). "By its very terms, it becomes applicable only when the government's role shifts from investigation to accusation." *Id.* Because Plaintiff complains of police activity that

occurred only as part of the investigation process, Plaintiff's Sixth Amendment right to counsel did not attach to this investigation. Therefore, the City of Tulsa is entitled to summary judgment in its favor on this claim.

### E. Ninth Amendment Violations

Plaintiff alleges his "Ninth Amendment right was lost during the course of seizing the Plaintiff's DNA against his will, which protects one against such disparagement." (Doc. No. 58, ¶ 47). As the City of Tulsa correctly points out, the Ninth Amendment "is a rule of interpretation rather than a source of rights." *Froehlich v. State, Dep't of Corr.*, 196 F.3d 800, 801 (7th Cir. 1999). For this reason, the Ninth Amendment does not provide Plaintiff with a cause of action against the City of Tulsa. *See Clynch v. Chapman*, 285 F. Supp. 2d 213, 218-19 (D. Conn. 2003) (dismissing § 1983 claim for violation of Ninth Amendment rights, on the ground that the Ninth Amendment "is not an independent source of rights.") (citing cases). Accordingly, the City of Tulsa is entitled to summary judgment on this claim.

### F. Tenth Amendment Violations

Plaintiff alleges he "suffered abuse of his Tenth Amendment right, which reserves rights to the People when no laws exist on either Federal or State level (in this case, regarding the issuance of a DNA Warrant)." (Doc. No. 58, ¶ 47). Again, the City of Tulsa correctly points out that the Tenth Amendment does not create a cause of action in a § 1983 case. The Tenth Amendment states, "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. This amendment "creates no constitutional rights cognizable in a civil rights cause of action." *Strandberg v. City of Helena*, 791 F.2d 744, 749 (9th Cir. 1986). Accordingly, the City of Tulsa is entitled to summary judgment on this claim.

### G. Fourteenth Amendment Violations

Plaintiff further alleges he "lost his Fourteenth Amendment right which guarantees 'Due Process.'" (Doc. No. 58, ¶ 47). However, the bases of Plaintiff's claims against the City of Tulsa are that (1) the search warrant to collect his DNA was invalid and (2) execution of the warrant was unlawful. As the City of Tulsa correctly points out, Plaintiff's allegations sound not in the Fourteenth Amendment right to due process, but rather in the Fourth Amendment right to be free from unlawful searches and seizures. *See Shimomura v. Carlson*, 811 F.3d 349, 361 (10th Cir. 2015) (concluding the Fourth Amendment is the proper guide for analyzing physically intrusive governmental conduct, rather than the more general due process protections of the Fourteenth Amendment) (citing cases). Accordingly, Plaintiff's § 1983 claim under the Fourteenth Amendment must be dismissed, and the City of Tulsa is entitled to summary judgment on this claim.

### H. "Selective Prosecution" Claim

Finally, in its Summary Judgment Motion, the City of Tulsa addresses Plaintiff's allegations regarding "selective prosecution." (*See* Doc. No. 58, ¶ 39). The City of Tulsa argues any such claim for "selective prosecution" must fail as a matter of law. The Court agrees. The defense of "selective prosecution" is a defense to be raised by a criminal defendant when he is subject to a prosecution that is intentionally based on an unjustifiable standard such as race, religion, or other arbitrary classification. *See, e.g., United States v. Deberry*, 430 F.3d 1294, 1299 (10th Cir. 2005). Here, Plaintiff's claim fails as a matter of law, because the undisputed evidence shows Plaintiff was never arrested, charged, or otherwise prosecuted in relation to the rape or attempted kidnapping. (*See* Doc. No. 87-5 (Affidavit of Detective Myers), ¶ 24). Therefore, the City of Tulsa is entitled to summary judgment on this claim.

# I.      Other "Disputed Facts"

Plaintiff's Response (Doc. No. 96) and Surreply (Doc. No. 121) point to various other "disputed facts."   Specifically, in the Response, Plaintiff (1) questions TPD's motives for investigating Plaintiff; (2) questions what Beth Mathers and Ruth Bilder told TPD; (3) questions how many other gold/tan Nissan Maxima drivers were investigated by TPD; (4) accuses the City of Tulsa of misleading the Court in its Motion for Summary Judgment by suggesting Plaintiff was driving the suspect's vehicle; (5) disputes the City of Tulsa's statement that Plaintiff was never questioned by TPD; (6) accuses the City of Tulsa of withholding information; and (7) suggests TPD is attempting to use Plaintiff's refusal to provide a DNA sample as evidence against him.   In the Surreply, Plaintiff reiterates many of his arguments, reiterates the need for further discovery, and attaches several exhibits, including a "Search Warrant for Body Samples" pertaining to Plaintiff and correspondence with Plaintiff's counsel regarding an agreement for Plaintiff to appear voluntarily to surrender his DNA sample.

To the extent Plaintiff asks the Court to defer ruling on the City of Tulsa's motion until further discovery is conducted, the Court denies such a request.  *See* Fed. R. Civ. P. 56(d).  The Plaintiff has had adequate time to conduct discovery in this case, and Plaintiff points to no discovery he intends to conduct that would affect the Court's ability to rule on the Motion for Summary Judgment.  Further, none of Plaintiff's "disputed facts" preclude summary judgment in this case, because they are either immaterial to the resolution of Plaintiff's claims or based on pure speculation.

***

After consideration of the record and relevant law, the Court concludes there is no genuine issue of material fact and the City of Tulsa is entitled to judgment as a matter of law on

all claims against it. There is no evidence that the City of Tulsa violated Plaintiff's constitutional rights, and Plaintiff has offered only unsubstantiated allegations and speculation in support of his claims. Accordingly, the Court grants summary judgment in the City of Tulsa's favor on all claims against it.

## II. Church of Holistic Science, Inc., Beth Mathers, and Ruth Bilder's Motion for Summary Judgment

Plaintiff alleges Defendants Beth Mathers and Ruth Bilder knowingly and maliciously made a false report to TPD implicating Plaintiff as a suspect in the criminal investigation. (Doc. No. 58, ¶¶ 40-41). In their Motion for Summary Judgment, Defendants Church of Holistic Science, Inc., Beth Mathers, and Ruth Bilder argue there is no genuine issue of material fact regarding whether any of these defendants contacted TPD in regard to the lemonade stand incident or falsely maligned Plaintiff in order to implicate him as a suspect. The Court agrees with the defendants.

The record before the Court indicates that neither Ruth Bilder nor Beth Mathers initiated contact with TPD. Instead, Detective Myers initiated contact with these defendants pursuant to his own investigation of the car being driven by Plaintiff. (Doc. No. 87-5, ¶¶ 9-14). Moreover, the record indicates Ms. Bilder and Ms. Mathers simply informed TPD that Plaintiff was in possession of the vehicle under investigation. (*Id.* ¶ 14; Doc. Nos. 73-1, 73-2). Ms. Bilder further advised Detective Myers that she was in the process of obtaining a divorce from Plaintiff. (Doc. No. 87-5, ¶ 14).

Although Plaintiff argues it is implausible that Ms. Bilder and Ms. Mathers "exonerated" Plaintiff in their interviews with TPD as they claim (*see* Doc. Nos. 73-1, 73-2), Plaintiff submits no evidence to support his theory that either defendant gave a false report to TPD regarding

Plaintiff. Even if the Court disregards the self-serving statements that Ms. Bilder and Ms. Mathers "exonerated" Plaintiff, the Court finds that no reasonable juror could find in Plaintiff's favor on his claim against Ms. Bilder, Ms. Mathers, or the Church of Holistic Science, Inc. In his Response, Plaintiff describes long-term hostility and various unrelated lawsuits between him and these defendants, but he offers only speculation that they made fraudulent representations to TPD regarding the suspect in the lemonade stand incident. Accordingly, these defendants are entitled to summary judgment in their favor.

Plaintiff further argues in his Response that additional discovery is required to learn "whatever was said to authorities by these women." (Doc. No. 77, at 3). However, Plaintiff has had ample time for discovery, and Plaintiff points to no discovery he intends to conduct that would affect the Court's ability to rule on this Motion for Summary Judgment. Accordingly, to the extent Plaintiff asks the Court to defer ruling on this motion until further discovery is conducted, the Court denies the request. *See* Fed. R. Civ. P. 56(d).

After consideration of the record and relevant law, the Court concludes there is no genuine issue of material fact and the defendants Church of Holistic Science, Inc., Ruth Bilder, and Beth Mathers are entitled to judgment as a matter of law on the claim against them. There is no evidence that these defendants falsely maligned Plaintiff to TPD, and Plaintiff has offered only unsubstantiated speculation and immaterial facts in support of his claim against them. Plaintiff's unsupported allegations are insufficient to overcome the defendants' Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c).

**CONCLUSION**

For the reasons detailed above, Defendant City of Tulsa's Motion for Summary Judgment (Doc. No. 87) is **GRANTED,** and Defendants Church of Holistic Science, Inc., Beth Mathers, and Ruth Bilder's Motion for Summary Judgment (Doc. No. 73), is **GRANTED**.